**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MARTIN TORRES, individually and on behalf of all others similarly situated, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | No. 19-cv-2887 |
| | ) | |
| v. | ) | Hon. Virginia M. Kendall |
| | ) | |
| EVOLENT HEALTH LLC, | ) | Magistrate Hon. Sheila Finnegan |
| | ) | |
| Defendant | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION
FOR APPROVAL OF SETTLEMENT UNDER THE FAIR LABOR STANDARDS ACT,
FOR APPOINTMENT OF SETTLEMENT ADMINISTRATOR, FOR APPROVAL OF
<u>SERVICE AWARD, AND FOR APPROVAL OF ATTORNEYS' FEES AND COSTS</u>**

Thomas M. Ryan
Law Office of Thomas M. Ryan, P.C.
35 East Wacker Drive
Suite 650
Chicago, Illinois 60601
(312) 726-3400
tom@tomryanlaw.com

James X. Bormes
Catherine P. Sons
Law Office of James X. Bormes, P.C.
8 South Michigan Avenue
Suite 2600
Chicago, Illinois 60603
(312) 201-0575
bormeslaw@sbcglobal.net
cpsons@bormeslaw.com

I.     INTRODUCTION ........................................................................................1

II.    PROCEDURAL BACKGROUND AND SETTLEMENT NEGOTIATIONS..................2

    A.    Factual Allegations ...........................................................................2

    B.    Overview of Investigation, Litigation, and Settlement Negotiations .....................3

        1.    Plaintiff's FLSA Claims were Conditionally Certified as a Collective Action ...........................................................................3

        2.    History of Settlement Discussions ..............................................3

III.    SUMMARY OF THE SETTLEMENT TERMS ..........................................................4

    A.    The Settlement Fund .........................................................................4

    B.    Opt-In Plaintiffs and Distribution of Settlement Checks........................4

    C.    Limited Release for Opt-In Plaintiffs ...................................................5

    D.    Calculation of Individual Settlement Payments, Tax Treatment and Unclaimed Settlement Funds .....................................................5

    E.    Service Award and Attorneys' Fees and Litigation Costs ......................6

IV.    ONE-STEP APPROVAL IS APPROPRIATE FOR FLSA COLLECTIVE ACTION SETTLEMENTS ....................................................................................6

V.    THE COURT SHOULD APPROVE THE FLSA SETTLEMENT AS FAIR AND REASONABLE ....................................................................................7

    A.    The Proposed Settlement is the Product of Contested Litigation ...........7

    B.    The Proposed Settlement Reflects a Fair and Reasonable Resolution of a Bona Fide Dispute Between the Parties........................................8

    C.    The Proposed Settlement is Fair and Reasonable ..................................9

VI.    THE REQUESTED SERVICE AWARD SHOULD BE APPROVED ..........................10

VII.    THE SETTLEMENT ADMINISTRATOR SHOULD BE APPOINTED ......................12

VIII.    PLAINTIFF'S COUNSEL REQUEST FOR ATTORNEYS' FEES AND LITIGATION EXPENSES SHOULD BE APPROVED .................................................12

i

A.  Reasonable Attorneys' Fees and Costs and Under the FLSA...............................12

B.  Plaintiffs' Counsel's Request for Attorneys' Fees and Costs is Reasonable.........15

IX.  CONCLUSION.............................................................................................................17

## Cases

*A. Bauer Mechanical, Inc. v. Joint Arbitration Bd. of Plumbing Contrs., U.A.,*
562 F.3d 784, 793 (7th Cir. 2009)................................................................14

*American International Group, Inc. v. ACE INA Holdings, Inc.,*
2012 U.S. Dist. LEXIS 25265, *59 (N.D. Ill. Feb. 28, 2012)...................................11

*Anderson v. AB Painting & Sandblasting Inc.,*
578 F.3d 542, 545 (7th Cir. 2009)................................................................14

*Barrow v. Falck,*
977 F.2d 1100, 1103 (7th Cir. 1992)..............................................................14

*Batt v. Micro Warehouse, Inc.,*
241 F.3d 891, 893 (7th Cir. 2001)................................................................13

*Beckman v. KeyBank, N.A.,*
293 F.R.D. 467, 476 (S.D.N.Y. 2013)..............................................................7

*Beesley v. Int'l Paper Co.,*
No. 06 cv 703, 2014 WL 375432, at *4 (S.D. Ill. Jan. 31, 2014) ...............................11

*Berger v. Xerox Corp. Ret. Income Guar. Plan,*
2004 U.S. Dist. LEXIS 1819, *7 (S.D. Ill. Jan. 22, 2004) .....................................11

*Briggs v. PNC Fin. Servs. Group, Inc.,*
No. 15-dv-10447, 2016 WL 7018566, at *1 (N.D. Ill. Nov. 29, 2016) ...........................7

*Castillo v. Noodles & Co.,*
No. 16-cv-03036, 2016 WL 7451626, at *1 (N.D. Ill. Dec. 23, 2016) ...........................7

*Chesemore v. All. Holdings, Inc.,*
2014 WL 4415919, *5, *12 (W.D. Wis. Sept. 5, 2014)............................................11

*City of Burlington v. Dague,*
505 U.S. 557, 562, 112 S. Ct. 2638 (1992) .....................................................13

*City of Riverside v. Rivera,*
477 U.S. 561, 576 (1986) ...................................................................14, 16

*Cook v. Niedert,*
142 F.3d 1004, 1016 (7th Cir. 1998).............................................................10

*Dominguez v. Quigley's,*
2012 U.S. Dist. LEXIS 131848 (N.D. Ill. Sept. 14, 2012).......................................14

*Espenscheid v. DirectSat USA, LLC,*
705 F.3d 770, 771 (7th Cir. 2013)...............................................................7

*Espenscheid v. DirectSat USA, LLC,*
688 F.3d 872, 876-77 (7th Cir. 2012) ..........................................................11

*Estate of Enoch ex. Rel. Enoch v. Tienor,*
570 F.3d 821, 823 (7th Cir. 2009)..............................................................14

iii

*Garcia v. Tyson Foods,*
No. 1203346, 2014 WL 4068351 (10th Cir. August 19, 2014) ................................................16

*Genesis Healthcare Corp. v. Symczyk,*
133 S. Ct. 1523, 1529 (2013) ...................................................................................................7

*Gusman v. Unisys Corp.,*
986 F.2d 1146, 1149 (7th Cir. 1993) ......................................................................................13

*Harrison v. Madigan et. al.,*
No. 10-cv-3425 (N.D. Ill.).......................................................................................................14

*Heder v. City of Two Towers,*
255 F.Supp.2d 947, 955-56 (E.D. Wis. 2003) ........................................................................16

*Hensley v. Eckerhart,*
461 U.S. 424, 433 (1983) ........................................................................................................13

*Hoffman-La Roche Inc. v. Sperling,*
493 U.S. 165 (1989) ..................................................................................................................7

*Holyfield v. F.P. Quinn & Co.,*
1991 WL 65928 at *1 (N.D. Ill. Apr. 22, 1991).....................................................................16

*In re Synthoid Marketing Litigation,*
264 F.3d 712, 722-23 (7th Cir. 2001) .....................................................................................10

*Johnson v. GDF, Inc.,*
668 F.3d 927, 929 (7th Cir. 2012) ..........................................................................................13

*Johnson v. Midwest Logistics Sys., Ltd.,*
No. 11 Civ. 1061, 2013 WL 2295880, *5-6 (S.D. Ohio May 24, 2013)...................................12

*Letourneau v. Pan American Financial Services, Inc.,*
151 F.3d 1033 (7th Cir. 1998) ................................................................................................13

*Lynn's Food Stores, Inc. v. U.S. DOL,*
679 F.2d 1350, 1354 (11th Cir. 1982) ......................................................................................9

*McKenna v. Champion Int'l Corp.,*
747 F.2d 1211, 1213 (8th Cir. 1984) ........................................................................................7

*People Who Care v. Rockford Bd. Of Educ., Schill Dist. No. 205,*
90 F.3d 1307, 1312 (7th Cir. 1996) ........................................................................................16

*Prena v. BMO Fin. Corp.,*
No. 15 C 09175, 2015 WL 2344949, at *1 (N.D. Ill. May 15, 2015) ........................................7

*Redmon v. Harris & Harris, Ltd.,*
Case No. 1:16-dv-11263 ............................................................................................................7

*Roberts v. Apple Sauce, Inc.,*
No. 12-cv-830, 2014 WL 480252, at *1 (N.D. Ind. Sept. 25, 2014)..........................................9

*Schlacher v. Law Offices of Phillip J. Rotche & Associates, P.C.,*
  574 F.3d 852, 857 (7th Cir. 2009) .......................................................................14

*Schmidt v. Smith & Wollensky LLC,*
  Case No. 09-2752 (N.D. Ill.) ..............................................................................11

*Sheehan v. Donlen Corp.,*
  173 F.3d 1039, 1048 (7th Cir. 1999) ...................................................................14

*Singleton v. Domino's Pizza, LLC,*
  976 F. Supp. 2d 665, 691 (D. Md. 2013) .............................................................11

*Small v. Richard Wolf Med. Instruments Corp.,*
  264 F.3d 702, 707 (7th Cir. 2001) .......................................................................12

*Tolentino v. Friedman,*
  46 F.3d 645, 652 (7th Cir. 1995) .........................................................................16

*Uphoff v. Elegant Bath, Ltd.,*
  176 F.3d 399, 407 (7th Cir. 1999) .......................................................................13

*Woods v. Club Cabaret, Inc.,*
  No. 1:15-cv-01213-JEH, 2017 WL 4054523, at *9 (C.D. Ill. May 17, 2017) ...........8

*Zagorski v. Midwest Billing Servs., Inc.,*
  128 F.3d 1164, 1167 (7th Cir. 1997) ...................................................................13

**Statutes**

29 U.S.C. § 207(a) ....................................................................................................3

29 U.S.C. § 216(b) ..........................................................................................7, 12, 14

820 ILCS § 105/4(a) .............................................................................................2, 3

Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ......................................... *passim*

Illinois Minimum Wage Law, 820 ILCS § 105/1 *et seq.* ..................................... *passim*

v

## I.  INTRODUCTION

Named Plaintiff Martin Torres, on behalf of himself and all Opt-In Plaintiffs, and Evolent Health LLC ("Defendant") have reached a settlement in this lawsuit (the "Action").  The Settlement is the result of arm's-length negotiations, conducted by experienced counsel for all Parties following a mediation with a private mediator, and after investigating the claims and engaging in written discovery and three depositions.  The Parties' Settlement covers the claims of the Named Plaintiff, who worked in Defendant's Illinois call center as a phone-based customer service representative, and 258 additional Opt-In Plaintiffs who worked for Defendant in Illinois, Texas and Florida.  In addition to the Named Plaintiff, all 258 Opt-in Plaintiffs previously filed consent forms to be party plaintiffs in this Action.

Provided that the Settlement is approved, the Settlement Administrator will mail all Opt-In Plaintiffs a Settlement Payment check representing their pro rata share of the Settlement Fund. Opt-In Plaintiffs who cash their Settlement Payments will release all overtime claims under the FLSA and any parallel local or state laws.  Nothing more is required of the Opt-in Plaintiffs except to cash their checks.  Opt-In Plaintiffs who do not cash their settlement checks will not release any claims against Defendant.

The total settlement fund is $385,000.00.  As set forth in greater detail below, under the settlement, each of the 258 individuals will receive approximately $13.30 for each full time week worked during an approximate three year period beginning on April 30, 2016, plus an additional one-time payment of $77.52 per person.  Thus, if an individual worked the equivalent of 50 full time workweeks during the recovery period, s/he will receive approximately $772.02 ($13.30 x 50 + $77.52 = $742.52).  An individual who worked 100 full time workweeks will receive approximately $1,466.02 ($13.30 x 100 + $77.02 = $1,407.02), and if someone worked 150

fulltime workweeks, s/he will receive approximately $2,160.52 ($13.30 x 150 + $77.02 = $2,072.02). The average per person payment totals approximately $484.39. As set forth below, this a reasonable resolution of a *bona fide* dispute under the FLSA. Accordingly, this Court should approve this settlement.

## II.    PROCEDURAL BACKGROUND AND SETTLEMENT NEGOTIATIONS

### A. Factual Allegations

This lawsuit arises under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") and the Illinois Minimum Wage Law, 820 ILCS § 105/1 *et seq.* ("IMWL"), for Defendant's alleged failure to i) pay Plaintiff and other similarly situated persons all earned overtime pay for all time worked, and ii) include non-discretionary bonuses in determining the employees' regular and overtime rates of pay.

Defendant manages, controls and operates customer service call centers within this judicial district and in Kentucky, Texas and Florida. Plaintiff alleges that Defendant required and/or permitted Plaintiff and other similarly situated telephone-dedicated customer service representatives to perform unpaid work before and after their scheduled shift times. This unpaid pre-shift work includes logging into Defendant's computers and network, initializing several software programs, and reading company issued emails and instructions at the beginning of their shifts. The alleged unpaid post-shift work includes completing customer service calls, securing their workstations, and securing any customer or proprietary information at and after the end of their shifts. Defendant denies these allegations or that it fails to pay overtime due to employees.

Additionally, Plaintiff alleges that Defendant failed to include non-discretionary bonuses earned by Plaintiff and similarly situated employees in calculating the employees' regular rate of pay. Plaintiff alleges that this failure caused Defendant's employees to be paid an overtime wage

in an amount less than actually earned. Plaintiff further alleges that Defendant's conduct violates the FLSA and IMWL, which require non-exempt employees to be compensated for their overtime work at a rate of one and one-half times their regular rate of pay. *See e.g.* 29 U.S.C. § 207(a); 820 ILCS § 105/4(a).

### B. Overview of Litigation and Settlement Negotiations

#### 1. Plaintiff's FLSA Claim was Conditionally Certified as a Collective Action

On January 6, 2020, the Court granted conditional certification to the following FLSA collective:

> All persons who worked for Defendant as telephone-dedicated employees, however titled, and who were compensated, in part or in full, on an hourly at Defendant's call centers in Illinois, Texas or Florida at any time between April 30, 2016 and the present who did not receive the full amount of overtime wages earned and owed to them.

(ECF No. 30). Thereafter, the claims administrator issued notice of the collective action to approximately 756 individuals. A total of 258 individuals have filed consent forms and joined the case.

#### 2. History of Settlement Discussions

At the conclusion of the opt-in period, the Parties conferred and agreed to discuss resolution of the Opt-in Plaintiffs' claims, and they agreed to retain a neutral mediator, Lynn P. Cohn, a Professor of Law and Director of the Center on Negotiation and Mediation at Northwestern University School of Law. Prior to the mediation, Defendant produced payroll records and pay rate information for the Opt-in Plaintiffs. This information allowed Plaintiffs' Counsel to evaluate the potential damages at issue in the lawsuit. The Parties provided the mediator with their mediation positions and they engaged in the mediation on July 15, 2020. The Parties did not reach a resolution at the conclusion of the July 15, 2020 mediation. Nevertheless, they continued to

negotiate during the next four weeks and eventually reached an agreement and settlement in principle. Thereafter the parties drafted and executed a Joint Stipulation of Settlement and are now submitting it for this Court's consideration and approval. A true and accurate copy of the Joint Stipulation is attached hereto as Exhibit 1.

## III.  SUMMARY OF THE SETTLEMENT TERMS

### A.  The Settlement Fund

Defendant has agreed to pay $385,000.00 to settle the claims in this Action, which shall be used to provide for (i) Settlement Payments to the Opt-In Plaintiffs; (ii) the settlement administrator's costs; (iii) a Service Award to the Named Plaintiff; (iv) Plaintiff's Attorneys' Fees; and (v) Plaintiff's Litigation Expenses. (Ex. 1, Joint Stipulation of Settlement, § 4(a), (b)). The Settlement Fund does not include the employer's share of applicable employment taxes, which Defendant will pay separate and apart from the Settlement Fund. (*Id.*, §§ 1(k), 4 (d)).

### B.  Opt-in Plaintiffs and Distribution of Checks

A total of 258 individuals opted into this Action. The Parties have selected Administrator Analytics Consulting LLC to be the Settlement Administrator. Should the Court approve the Settlement, the Settlement Administrator will shortly thereafter mail to all Opt-in Plaintiffs their settlement checks along with a notice explaining the key terms of the Joint Stipulation. (Ex. 1, Joint Stipulation of Settlement, §8 (g)(i)). A copy of the notice that will be mailed with the Settlement Payments is included as Exhibit B to the Joint Stipulation.

The Settlement Payment checks shall be negotiable for 180 days from the date they are mailed by the Settlement Administrator (the "Check Cashing Deadline"). (*Id.* at § 8(g)(i)). The Settlement Administrator will forward any settlement checks returned as undeliverable with a forwarding address to the identified forwarding address. (*Id.* at § 8(h)). If any settlement checks

4

are returned to the Settlement Administrator as undeliverable without a forwarding address, the Settlement Administrator will search for the Opt-In Plaintiff's updated address through available databases such as Accurint or a commercial equivalent, and will forward the Settlement Payment to the Opt-In Plaintiff at the new address obtained in this manner, if any. (*Id.*). If the Settlement Payment is returned as undeliverable after this second mailing, or if no forwarding address is otherwise located before the Check Cashing Deadline, the notice process shall end for that Opt-In Plaintiff. (*Id.*). Plaintiff's counsel expect few, if any, of the settlement checks will be undeliverable because the Opt-in Plaintiffs relatively recently opted into the case (*i.e*., generally between February 11, 2020 and April 15, 2020) and during the opt-in process, they provided their updated addresses along with their consent forms.

### C. Limited Release for Opt-in Plaintiffs

Opt-In Plaintiffs who cash their settlement checks shall provide a limited release to Defendant. They will release and discharge the Released Parties from all causes of action related to unpaid overtime wages owed as a result of working in a telephone-dedicated customer service representative for Defendant during the Class Period under the FLSA and any parallel local or state laws. (Ex. 1, § 5(b)). Opt-In Plaintiffs who do not negotiate their Settlement Payment will not release their federal, local, or state overtime claims against Defendant pursuant to the Joint Stipulation of Settlement. (*Id.*).

### D. Calculation of Individual Settlement Payments, Tax Treatment, and Unclaimed Settlement Funds

With respect to the claims for the alleged failure to pay earned overtime wages, the Plaintiff and Opt-in Plaintiffs who worked as a telephone-dedicated customer service representative for at least one full-time workweek for Defendant during the relevant time period will receive a gross amount of approximately $13.30 for each such full week worked. With respect to the claims for

5

the alleged failure to include bonuses in the regular rate of pay, the Plaintiff and each Opt-in Plaintiff will share their respective pro rata share of a total sum of $20,000.00, or approximately $77.52 per person.

Each Opt-In Plaintiff will receive his or her Settlement Payment in one check, with half of the Settlement Payment representing owed wages and the other half of each Settlement Payment representing liquidated damages. (Ex. 1, § 4(g)). Regular employee payroll deductions shall be withheld from the portion of each Settlement Payment that is allocated to wages. (*Id.*, § 4(g)(i)). The Settlement Administrator will issue each Eligible Opt-in Plaintiff an IRS Form W-2 for the wage portion of each Settlement Payment and an IRS Form 1099 for the liquidated damages portion of each Settlement Payment as required by the IRS rules. (*Id.*, §§ 4(g)(i-ii)). Any portion of the Settlement Fund that remains unclaimed after the 180-day Check Cashing Deadline shall be remitted to the unclaimed property fund in the state in which the Eligible Opt-In Plaintiff last worked for Defendant, consistent with applicable law. (*Id.*, § 8(g))

### E.  Service Award and Attorneys' Fees and Litigation Costs

The Joint Stipulation permits the Named Plaintiff to apply for a Service Award in the amount of $10,000.00 to be paid from the Settlement Fund.  (*Id.*, § 7(d)).  Under the Joint Stipulation, Plaintiff's Counsel may request an amount not to exceed $230,000.00 from the Settlement Fund as attorneys' fees, and an amount not to exceed $14,386.28 for reimbursable litigation expenses. (*Id.*, § 4(b)(iii)).

## IV.  ONE-STEP APPROVAL IS APPROPRIATE FOR FLSA COLLECTION ACTION SETTLEMENTS

Plaintiff filed his Complaint as a putative hybrid class and collective action, but he only sought and obtained conditional certification of the FLSA claim. He does not seek Rule 23 certification of his claim under the Illinois Minimum Wage Law.  In the Seventh Circuit, a one-

6

step approval process is the norm in FLSA settlements that do not include Rule 23 classes. *Redmon v. Harris & Harris, Ltd.*, Case No. 1:16-cv-11263, Order Approving Settlement (April 4, 2018) (Alonso, J.), ECF No. 65; *Briggs v. PNC Fin. Servs. Group, Inc.*, No. 15-cv-10447, 2016 WL 7018566, at *1 (N.D. Ill. Nov. 29, 2016) (St. Eve, J.); *Castillo v. Noodles & Co.*, No. 16-cv-03036, 2016 WL 7451626, at *1 (N.D. Ill. Dec. 23, 2016)(Wood, J.). This is because collective actions under Section 216(b) of the FLSA require workers to affirmatively opt in to the litigation, unlike Rule 23 class actions, and thus do not implicate due process concerns. *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 771 (7th Cir. 2013); *see also Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1529 (2013). Under the FLSA, "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date." *McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984), abrogated on other grounds by *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989). Thus, courts do not apply the exacting standards for approval of a class action settlement under Rule 23 to FLSA settlements. *See, e.g., Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 476 (S.D.N.Y. 2013). There is no need to require that the settlement provide for opt-outs or objections where individuals are not part of the settlement unless they affirmatively decide to participate in it. *See Prena v. BMO Fin. Corp.*, No. 15 C 09175, 2015 WL 2344949, at *1 (N.D. Ill. May 15, 2015).

## V.    THE COURT SHOULD APPROVE THE FLSA SETTLEMENT AS FAIR AND REASONABLE

### A.  The Proposed Settlement is the Product of Contested Litigation

The Settlement is a result of contested litigation and was reached only after extensive investigation and litigation, described in Section II, supra. And the Settlement was reached only after the parties attended a day-long mediation with a neutral third-party mediator.  (Ex. 2, Ryan Decl., ¶¶ 11, 13).  Prior to the Settlement, the parties had a full opportunity to analyze the pertinent

factual and legal issues and assess the strengths and weaknesses of the claims and defenses at issue in this case. (Ex. 2, Ryan Decl., ¶ 12, 14; Ex. 3, Bormes Decl., ¶ 13). In the context of the Parties' litigation and settlement efforts, Defendant provided time and payroll data to Plaintiffs' Counsel for the Opt-in Plaintiffs. (Ex. 2, Ryan Decl., ¶ 12; Ex. 3, Bormes Decl., ¶ 11). Accordingly, the Court should find that the proposed Settlement was the product of contested litigation.

### B. The Proposed Settlement Reflects a Fair and Reasonable Resolution of a *Bona Fide* Dispute Between the Parties

"A bona fide dispute exists when an employee makes a claim that he or she is entitled to unpaid wages and when settlement requires resolution of the payment due." *Woods v. Club Cabaret, Inc.*, No. 1:15-cv-01213-JEH, 2017 WL 4054523, at *9 (C.D. Ill. May 17, 2017) (finding a bona fide dispute where the plaintiffs alleged the defendants failed to pay them minimum wages and illegally took their tips, the defendants denied the allegations, and the applicable limitations period was in dispute). Here, Plaintiff alleged Defendant violated the FLSA by failing to pay him and others similarly situated overtime at one and one-half times their regular rate when they worked more than forty (40) hours per week. Defendant denied that the Opt-in Plaintiffs were entitled to overtime and denied that they were entitled to damages. The Parties also disputed whether the Opt-in Plaintiffs were entitled to liquidated damages. Specifically, Defendants asserted that Plaintiff and the Opt-in Plaintiffs were permitted to clock in before shift start and clock out after shift end to attend to preliminary and post-liminary tasks. If the matter had not settled, Plaintiff risked decertification of his FLSA collective action after discovery, a process that would have been time-consuming and costly for all Parties. Plaintiff's and the Opt-in Plaintiffs' entitlement to overtime, their ability to survive decertification, their ability to maintain a certified collective through trial, and the amount of overtime allegedly due, are all material issues that Defendant vigorously disputed. The settlement occurred only after the Parties engaged in three

8

depositions and discovery which included document productions and payroll data for over 250 individuals who worked in several states. Recognizing the uncertain legal and factual issues involved, the Parties ultimately reached the settlement after several weeks of negotiations that took place after a full day of mediation. Accordingly, the Parties had a *bona fide* dispute prior to reaching their proposed settlement.

### C. The Proposed Settlement is Fair and Reasonable

The Parties' Settlement was the product of arm's-length negotiations by experienced wage and hour class/collective-action counsel. (Ex. 2, Ryan Decl., ¶¶ 7, 11-13; Ex. 3, Bormes Decl., ¶¶ 5, 10, 12). The Settlement has the effect of (1) providing monetary relief to those Opt-in Plaintiffs who have already opted into the Action and who choose to negotiate their settlement checks, (2) in exchange for a narrow and limited release of the Opt-in Plaintiffs' overtime wage claims only, and (3) eliminating the inherent risks both sides would bear if this litigation continued to resolution on the merits. Under these circumstances, a presumption of fairness should attach to the Settlement. *See Lynn's Food Stores, Inc. v. U.S. DOL*, 679 F.2d 1350, 1354 (11th Cir. 1982) (recognizing that courts rely on the adversary nature of a litigated FLSA case resulting in settlement as indicia of fairness); *Roberts v. Apple Sauce, Inc.*, No. 12-cv-830, 2014 WL 4804252, at *1 (N.D. Ind. Sept. 25, 2014) ("The reviewing Court normally approves a settlement where it is based on 'contentious arm's-length negotiations, which were undertaken in good faith by counsel' and where 'serious questions of law and fact exist such that the value of an immediate recovery outweighs the mere possibility of further relief after protracted and expensive litigation.'" (internal citations omitted)).

The Settlement compensates Opt-in Plaintiffs who choose to participate in the Settlement and eliminates the possibility of a dismissal, decertification of the collective, loss at trial, or loss

on appeal. Consequently, this Settlement brings value and certainty now, as opposed to years from now. The substantial benefit that Opt-in Plaintiffs will immediately receive is a significant factor weighing in favor of the Court's approval of the proposed Settlement. In addition, Opt-in Plaintiffs may elect not to negotiate their settlement checks and not to release their overtime wage claims.

## VI.     THE REQUESTED SERVICE AWARD SHOULD BE APPROVED

The Settlement Agreement also contemplates an Incentive Award of $10,000.00 to the Plaintiff to acknowledge his service to the Class. *In re Synthoid Marketing Litigation*, 264 F.3d 712, 722-23 (7th Cir. 2001); *Cook v. Niedert,* 142 F.3d 1004, 1016 (7th Cir. 1998)("Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit."). In examining the reasonableness of a requested service award, courts consider: (1) the actions the plaintiffs have taken to protect the interests of the class, (2) the degree to which the class has benefited from those actions, and (3) the amount of time and effort the plaintiffs expended in pursuing the litigation. *Cook*, 142 F.3d at 1016.

An analysis of those factors warrants the requested incentive award. First, Plaintiff took substantial actions to protect the interests of 258 individuals. The filing of the Complaint alone tolled the IMWL claims for the Illinois Opt-in Plaintiffs. He provided valuable information to Class Counsel prior to and during the litigation, dedicated his time and effort to prosecuting the claims in this case, and engaged in detailed communication with counsel. (Ex. 2, Ryan Decl., ¶ 19; Ex. 3, Bormes Decl., ¶ 18). He extensively conferred with Class Counsel during discovery and in response to various factual and legal arguments Defendant raised in discovery and during the mediation process. (Ex. 2, Ryan Decl., ¶ 19; Ex. 3, Bormes Decl., ¶ 18). He sat for a contested deposition and met with his counsel in person in preparation of his deposition. He participated in

every way that was asked of him. In doing so, he assumed significant risk that "should the suit fail, [they could] find [themselves] liable for the defendant's costs". *Espenscheid v. DirectSat USA, LLC*, 688 F.3d 872, 876-77 (7th Cir. 2012) (internal citations omitted). "The incentive reward is designed to compensate [named plaintiffs] for bearing these risks." *Id.* Without the efforts of the Plaintiff, this settlement would not have been achieved. Additionally, the Plaintiff is providing a general release of any and all claims arising out of his employment with the Defendant. He merits recognition for risking retaliation from future employers for the benefit of all settlement members. *See, e.g. Beesley v. Int'l Paper Co.*, No. 06 cv 703, 2014 WL 375432, at *4 (S.D. Ill. Jan. 31, 2014) (recognizing that suits against former employers also carry risks of professional and personal repercussions); *Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665, 691 (D. Md. 2013) (noting that named plaintiffs risk future employers finding out, through a simple Google search, that they filed a class action lawsuit against their prior employer).

Courts in the Seventh Circuit routinely approve service awards similar to or even greater than the award requested here. *See e.g., American International Group, Inc. v. ACE INA Holdings, Inc.*, 2012 U.S. Dist. LEXIS 25265, *59 (N.D. Ill. Feb. 28, 2012) (Gettleman, J.)(approving a service award of $25,000.00 per named plaintiff); *Berger v. Xerox Corp. Ret. Income Guar. Plan*, 2004 U.S. Dist. LEXIS 1819, *7 (S.D. Ill. Jan. 22, 2004) (approving service awards as high as $20,000.00 per named plaintiff); *Schmidt v. Smith & Wollensky LLC,* Case No. 09-2752 (N.D. Ill.) (Dkt. #78, ¶ 5) (awarding $10,000 service award in Illinois Minimum Wage Law case); *Chesemore v. All. Holdings, Inc.*, 2014 WL 4415919, *5, *12 (W.D. Wis. Sept. 5, 2014) ($10,000 and $25,000 awards for, *inter alia*, submitting to discovery and participating in settlement discussions; noting that courts in the Seventh Circuit routinely approve service awards ranging from $5,000 to $25,000); *see also Johnson v. Midwest Logistics Sys., Ltd.*, No. 11 Civ. 1061, 2013 WL 2295880,

*5-6 (S.D. Ohio May 24, 2013) (recognizing that class members benefited from the class representative's contributions to litigation, and approving a service award of $12,500 when other class members' recovery would range from $260 to $1,000).  For all of the above reasons, this Court should approve the proposed service award of $10,000.00 for the Named Plaintiff.

## VII.  THE SETTLEMENT ADMINISTRATOR SHOULD BE APPROVED

Consistent with the Parties' settlement agreement, Plaintiff requests that the Court appoint Administrator Analytics Consulting LLC as the third-party Settlement Administrator. Administrator Analytics Consulting LLC has significant experience administering large and complex settlements and was jointly selected by the Parties.  (Ex. 4).

## VIII.  PLAINTIFF'S COUNSEL'S REQUEST FOR ATTORNEYS' FEES AND LITIGATION EXPENSES SHOULD BE APPROVED

### A.  Reasonable Attorneys' Fees and Costs Under the FLSA

This is not a common fund case.  Plaintiffs' Counsel seek approval of their fees under the lodestar method.  A district court must award reasonable attorney fees and costs to the prevailing plaintiff in a FLSA case, including a plaintiff who favorably settles his claims.  *See* 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."); *Small v. Richard Wolf Med. Instruments Corp.,* 264 F.3d 702, 707 (7th Cir. 2001) ("Prevailing plaintiffs, which may include plaintiffs who favorably settle their cases, are entitled to reasonable attorney's fees under the FLSA.").

To determine reasonable fees under the FLSA, the district court may generally follow the "lodestar" approach, multiplying a reasonable hourly rate by the number of hours reasonably expended on the litigation.  *Johnson v. GDF, Inc.,* 668 F.3d 927, 929 (7th Cir. 2012); *Uphoff v. Elegant Bath, Ltd.*, 176 F.3d 399, 407 (7th Cir. 1999); *Letourneau v. Pan American Financial*

12

*Services, Inc.*, 151 F.3d 1033 (7th Cir. 1998)(Table)(1998 WL 538130, *2); *City of Burlington v. Dague,* 505 U.S. 557, 562, 112 S. Ct. 2638 (1992) (In determining the reasonableness of attorneys' fees, the lodestar is generally recognized as a reasonable fee.).

A reasonable hourly rate should reflect the attorney's market rate, defined as "the rate that lawyers of similar ability and experience in the community normally charge their paying clients for the type of work in question." *Id.* (citations and internal quotation marks omitted). The fee applicant bears the burden of proving the market rate. *Uphoff*, 176 F.3d at 407. The attorney's actual billing rate for comparable work is considered to be the presumptive market rate. *Small*, 264 F.3d at 707. If, however, the court cannot determine the attorney's true billing rate - such as when the attorney maintains a contingent fee or public interest practice - the applicant can meet his or her burden by submitting evidence of fee awards that the applicant has received in similar cases. *Id.*, 264 F.3d at 707-08; *Uphoff*, 176 F.3d at 407. "[T]he lawyer who sacrifices income to assist a favored group of clients" still recovers his or her market rate. *Gusman v. Unisys Corp.*, 986 F.2d 1146, 1149 (7th Cir. 1993).

Once a reasonable hourly rate is determined, the Court must then analyze the number of hours expended. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). "In determining the reasonable number of hours, [a] court should exclude hours that are 'excessive, redundant or otherwise unnecessary.'" *Small*, 264 F.3d at 708 (quoting *Hensley*, 461 U.S. at 434). A court may adjust the fee award upward or downward, depending on a variety of factors, see *Hensley*, 461 U.S. at 430 n.3, and "retains a great deal of discretion" in doing so. *Zagorski v. Midwest Billing Servs., Inc.*, 128 F.3d 1164, 1167 (7th Cir. 1997); *Batt v. Micro Warehouse, Inc.*, 241 F.3d 891, 893 (7th Cir. 2001)("The district court has wide discretion in determining attorney's fees under the FLSA, and appellate review is thus limited to the highly deferential abuse of discretion standard.").

13

Congress included the fee-shifting provision in the FLSA in order to entice competent attorneys to prosecute what are often low-dollar wage claims. *See* 29 U.S.C. § 216(b); *Anderson v. AB Painting & Sandblasting Inc.*, 578 F.3d 542, 545 (7th Cir. 2009)(noting that "Congress wants even small violations of certain laws to be checked through private litigation."). As a result, attorneys' fees in wage claims often exceed the amount in controversy. *Anderson*, 578 F.3d at 545 ("Fee-shifting would not 'discourage petty tyranny" if attorney's fees were capped or measured by the amount in controversy.") (*quoting Barrow v. Falck*, 977 F.2d 1100, 1103 (7th Cir. 1992).

The Supreme Court has explicitly rejected a proportional reduction in fees based on the dollar amount recovered. *City of Riverside v. Rivera*, 477 U.S. 561, 576 (1986). Similarly, the Seventh Circuit has "repeatedly rejected the notion that [attorneys'] fees must be calculated proportionally to damages." *Estate of Enoch ex rel. Enoch v. Tienor*, 570 F.3d 821, 823 (7th Cir. 2009), *quoting Sheehan v. Donlen Corp.*, 173 F.3d 1039, 1048 (7th Cir. 1999); *Anderson*, 578 F.3d at 545 ("Because Congress wants even small violations of certain laws to be checked through private litigation and because litigation is expensive, it is no surprise that the cost to pursue a contested claim will often exceed the amount in controversy."

The Seventh Circuit has cautioned district judges not to forget that fees may be disproportionate to the damages awarded. *Schlacher v. Law Offices of Phillip J. Rotche & Associates, P.C.* 574 F.3d 852, 857 (7th Cir. 2009)); *A. Bauer Mechanical, Inc. v. Joint Arbitration Bd. of Plumbing Contrs., U.A.*, 562 F.3d 784, 793 (7th Cir.2009). Furthermore, attorney fee awards which are higher than the Plaintiffs' recovery have been approved in other individual FLSA cases and class action settlements. *See e.g. Dominguez v. Quigley's,* 2012 U.S. Dist. LEXIS 131848 (N.D. Ill. Sept. 14, 2012) (FLSA case applying lodestar and awarding Class Counsel almost $68,000.00 in fees and costs, about 17 times the amount of the settlement) and *Harrison v.*

14

*Madigan et.al.*, No. 10-cv-3425 (N.D. Ill.)(Doc. Nos. 98, 102, 109)(permitting class counsel to petition for attorney fees in the amount of $80,000.00, four times the amount of class recovery, where class members were to recover no more than $20,000.00).

A. <u>Plaintiffs' Counsels' Request for Attorneys' Fees and Costs Is Reasonable</u>

If this Court grants final approval of the settlement, Plaintiff and Opt-in Plaintiffs here will be prevailing parties because they will have an award entered in their favor allowing them to share in the settlement amount of $129,659.00.

Plaintiff's counsel request to be approved at an hourly rate of $550 for Thomas M. Ryan and James X. Bormes. Plaintiff's counsel are highly experienced in litigating complex cases including wage and hour class actions. (Ex. 2, Ryan Decl., ¶ 7; Ex. 3, Bormes Decl., ¶ 5, 21). While their qualifications are set forth in their affidavits, counsel respectfully submit that the most compelling proof of the level of their skills is the work they performed in this case before this Court. Additionally, Plaintiff's Counsel have previously been approved by this Court and others at these and similar rates in prior wage and hour class and collective actions. For example, in 2011, Judge Mary Anne Mason approved the hourly rates of $450 per hour for Mr. Ryan and Mr. Bormes in a call center class action. (Ex. 2, Ryan Decl., ¶ 25; Ex. 3, Bormes Decl., ¶ 21). In 2012, Judge Shadur approved the rate of $500/hr for Mr. Ryan in a wage and hour class action. (Ex. 2, Ryan Decl., ¶ 25). In 2013, Mr. Ryan and Mr. Bormes were approved at the rate of $550/hr in a Rule 23 class action settlement for unpaid wages. (Ex. 2, Ryan Decl., ¶ 25; Ex. 3, Bormes Decl., ¶ 21). Here, Plaintiff's Counsel's rate is appropriate, as "an applicant can meet his or her burden by…submitting evidence of fee awards that the applicant has received in similar cases." *See People Who Care v. Rockford Bd. Of Educ., Schill Dist. No. 205*, 90 F.3d 1307, 1312 (7th Cir.

1996)(*citing to Tolentino v. Friedman*, 46 F.3d 645, 652 (7th Cir. 1995)("...[E]vidence of fee awards received in similar cases should not be dismissed as "non-binding.").

With respect to the second element of the reasonableness of Plaintiff's Counsel's fee, the hours Plaintiffs' Counsel expended on the case are reasonable. In the litigation, Plaintiff's Counsel have spent over 435 hours of attorney time investigating and prosecuting this case, taking depositions, producing the Plaintiff for deposition, reviewing class wide data, consulting with a data expert, engaging in a mediation with a third party mediator, and they have incurred $14,386.28 in costs. (Ex. 2, Ryan Decl., ¶¶ 23, 24; Ex. 3, Bormes Decl., ¶ 21). Under the lodestar method of calculating reasonable attorney fees, and at rates previously approved by Courts in similar wage and hour experience in this District, Plaintiff's Counsel's attorney fees are $231,375.00. (Ex. 2, Ryan Decl., ¶ 25; Ex. 3, Bormes Decl., ¶ 21).

Lastly, the fact that the amount of fees requested exceeds the aggregate of the settlement payments to the collective does not mean that the amount of time spent on this case is unreasonable or the previously approved hourly rates for Plaintiffs' counsel are unreasonable. *See e.g., Riverside v. Rivera,* 477 U.S. 561, 578 (1986)(attorney fees do not need to be proportionate to the damages awarded; "A rule of proportionality would make it difficult, if not impossible, for individuals with meritorious civil rights claims but relatively small potential damages to obtain redress from the courts."); *Heder v. City of Two Towers*, 255 F.Supp.2d 947, 955-56 (E.D. Wis. 2003) (*quoting Holyfield v. F.P. Quinn & Co.,* 1991 WL 65928 at *1 (N.D. Ill. Apr. 22, 1991)("Given the nature of claims under the FLSA, it is not uncommon that attorneys' fee requests will exceed the amount of the judgment in the case."); *see also Garcia v. Tyson Foods*, No. 12-3346, 2014 WL 4068351 (10th Cir. August 19, 2014)(attorney fees deemed reasonable under the FLSA where the jury awarded employees $503,011.00 and the court approved $3,389,207.41 in attorney fees).

Moreover, this is not a common fund case and the analysis of the fee request is not one of a percentage of a fund. It is a lodestar analysis under the fee-shifting FLSA statute, which provides for reasonable attorneys' fees.

With respect to costs, the Settlement provides that Class Counsel may apply to the Court for payment of litigation expenses up to $14,368.28. Plaintiff's Counsel seek reimbursement of $14,368.28, which is the amount of litigation expenses Plaintiff's Counsel has incurred in this matter through September 25, 2020. (Ex. 2, Ryan Decl. ¶ 24). Plaintiff's Counsel incurred the filing fees ($400.00), service fees ($80.00), Plaintiff's portion of the mediator's fee ($3,375.00), three deposition transcripts ($2,928.00), an expert's fee ($2,450.00) and copying costs ($70.00), and the claims administrator's costs for the stage-one notice process ($5,078.08). (See Ex. 2, Ryan Declaration, ¶ 24). Plaintiff's Counsel's request of that amount from the Settlement Fund as payment of costs and expenses is appropriate, as these costs and expenses were necessarily incurred in order to litigate and settle this case. (Ex. 2, Ryan Decl., ¶ 24).

Based on the case law and facts of this case, Plaintiff's request for attorneys' fees and costs is warranted in light of the significant and immediate financial benefit to the collective members. Plaintiff's Counsel assumed a substantial risk of non-payment given the difficult and complex issues of law and fact that required sophisticated examination and analysis which was performed in a vigilant manner for years. For all of the above reasons, Plaintiff's counsel request this Court to grant their unopposed request for attorneys' fees in the amount of $230,000.00 and reimbursement of costs in the amount not to exceed $14,386.28.

## IX. CONCLUSION

This Settlement is a result of contested litigation and was reached after extensive settlement negotiations with an experienced wage and hour mediator. The Parties engaged in a thorough

analysis of the facts and the data at issue and the Settlement provides Opt-in Plaintiffs with significant monetary relief. Because the settlement is a fair and reasonable resolution of a bona fide dispute between the Parties, it should be approved and this Honorable Court should enter the proposed order attached hereto as Exhibit 5.

Dated:  October 1, 2020

Respectfully submitted,
Martin Torres, individually and on behalf of a collective and class of persons similarly situated.

/s/ Thomas M. Ryan
One of Plaintiff's attorneys

James X. Bormes
Catherine P. Sons
Law Office of James X. Bormes, P.C.
8 South Michigan Avenue, Suite 2600
Chicago, IL 60603
(312) 201-0575

Thomas M. Ryan
Law Office of Thomas M. Ryan, P.C.
35 East Wacker Drive, Suite 650
Chicago, Illinois 60601
(312) 726-3400

## CERTIFICATE OF SERVICE

I hereby certify that on October 1, 2020, I transmitted the attached Motion and Memorandum for Approval of the Parties' Settlement to counsel for Defendant via ECF to the following:

Michael R. Phillips
Melissa Marie Weiss
Joel H. Spitz
McGuire Woods LLP
77 W. Wacker Drive, Suite 4100
Chicago, IL 60601-1815
jspitz@mcguirewoods.com
mweiss@mcguirewoods.com
mphillips@mcguirewoods.com

/s/ Thomas M. Ryan
One of Plaintiff's Attorneys